GEORGE W. CROSSMAN et al., Appellants, *v.* THEODORE G. LURMAN et al., Respondents.

CONSTITUTIONAL LAW — PUBLIC HEALTH LAW RELATING TO ADULTERATIONS OF FOOD NOT IN CONFLICT WITH ACT OF CONGRESS ON SAME SUBJECT, NOR IS IT VIOLATIVE OF INTERSTATE COMMERCE CLAUSE OF FEDERAL CONSTITUTION. Section 41 of the Public Health Law (L. 1893, ch. 661), relating to adulterations in food and providing that an article shall be deemed to be adulterated, " 6. If it be colored, or coated, or polished, or powdered, whereby damage is concealed, or it is made to appear better than it really is, or of greater value," is not in conflict with chapter 839 of the United States Statutes of 1890 relating to the same subject, since that act contains no provision authorizing the importation of articles which are adulterated for the purpose of deceiving and defrauding purchasers and consumers; nor is it violative of the interstate commerce clause of the Federal Constitution as an attempt to prohibit the sale of goods imported into the state of New York in original packages, since the state under its reserved police powers has the right to inspect them, and, if adulterated for the purposes of fraud and deception, it may exclude them altogether.

*Crossman* v. *Lurman,* 57 App. Div. 393, affirmed.

(Argued May 22, 1902; decided May 29, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 13, 1901, affirming a judgment in favor of defendants entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick R. Kellogg* and *Arthur J. Baldwin* for appellants. The learned court erred in denying the motion to direct a verdict upon the ground that the statute of this state, so far as it affected imported coffees, was unconstitutional. (*Brown* v. *State,* 25 U. S. 419 ; *Bowman* v. *C. & N. W. Ry. Co.,* 125 U. S. 465 ; *Leisy* v. *Hardin,* 135 U. S. 100 ; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1.)

*Charles Stewart Davison* for respondents. Section 41 of the Public Health Law, relating to adulteration of food, does not violate the interstate commerce clause of the Federal Constitution. (*Plumley* v. *Massachusetts,* 155 U. S. 461.)

HAIGHT, J. This action was brought to recover the damages sustained by the plaintiffs by reason of the refusal of the defendants to accept certain coffees tendered to them under an executory contract dated July 7, 1894.

The contract, so far as is material upon the question which we shall discuss, is as follows: " Sold for account of Messrs. W. H. Crossman & Bro. to Messrs. Theo. G. Lurman & Co., Baltimore, Md., about 250 No. 8, 250 No. 9. Five hundred (500) bags Rio coffee (sound and made sound portion), to be shipped at Rio de Janiero by str. Catania." The contract contains other provisions with reference to grading, under the rules of the Coffee Exchange of New York, the price to be paid and for determining the grade by arbitrators if a difference arises with reference thereto between the parties. When the coffee arrived it was tendered to the defendants and the number eight was accepted, but that graded as number nine was rejected as colored and damaged and far below the grade purchased, and the plaintiffs were asked to substitute other coffee. This coffee was subsequently sold by the plaintiffs on account of the defendants for a less sum than the contract price, and this action was brought to recover the difference. The defendants interposed the defense that the coffee was adulterated, colored, coated, polished and powdered, whereby damage was concealed and the coffee made to appear better than it really was, and of greater value, in contravention of the provisions of chapter 661 of the Laws of 1893 of New York. Upon the issue raised the case was tried before a jury, and upon such trial the sole question submitted to the jury was as to whether the coffee in question was colored, coated or powdered, whereby the damage was concealed, or it was made to appear better than it really was or of greater value. The verdict was in favor of the defendants, and the

judgment entered thereon was unanimously affirmed by the Appellate Division.

It is now contended on behalf of the plaintiffs that the statute alluded to is in contravention of the commerce clause of the Constitution of the United States, which provides that Congress shall have power to regulate commerce with foreign countries and among the several states of the Union.

The statute in question, so far as material, provides as follows: Section 41. "Adulterations. No person shall within the state, manufacture, produce, compound, brew, distill, have, sell, or offer for sale any adulterated food or drug. An article shall be deemed to be adulterated within the meaning of this act  *  *  *  in case of food  *  *  *  6. If it be colored, or coated, or polished, or powdered whereby damage is concealed or it is made to appear better than it really is or of greater value." By the law of Congress of 1890 (Ch. 839) it was provided (sec. 2): "That it shall be unlawful to import into the United States any adulterated or unwholesome food or drug, or any vinous, spirituous or malt liquors, adulterated or mixed with any poisonous or noxious chemicals, drug or other ingredient injurious to health." And then follow provisions adjudging offenders guilty of a misdemeanor and providing for their punishment. It may be that this law was only intended to prohibit importations of food or drugs which had been adulterated with articles which were injurious to public health, but it contains no provision authorizing the importation of articles which are adulterated for the purpose of deceiving and defrauding purchasers and consumers. We think, therefore, it cannot be held to be in conflict with the statute of this state.

The states have no power to regulate commerce with foreign countries or with each other. This power has been delegated to the Congress of the United States, and that body can, by law, determine what shall or shall not be permitted to be imported. With the right of importation follows the right of sale in original packages, and, therefore, the states cannot prohibit the sale of articles of commerce within their borders.

The states cannot, under the guise of inspection, or under their reserved police powers, prohibit the importation into their jurisdictions of sound meat, under the pretense that it may be damaged or decayed, or Texan cattle for fear they may be diseased, or spirituous or malt liquors for fear that they may intoxicate, or oleomargarine for fear it may be adulterated. (*R. R. Co.* v. *Husen*, 95 U. S. 465; *Bowman* v. *Chi. & N. W. Ry. Co.*, 125 U. S. 465; *Leisy* v. *Hardin*, 135 U. S. 100; *Schollenberger* v. *Penn.*, 171 U. S. 1.) But to this power delegated to Congress there exist certain exceptions. The articles of commerce must be merchantable and of the character represented. The states, under the police powers reserved to them, may inspect and reject that which would be injurious to the public health or public morals and that which was designed to cheat or defraud the people. They may, consequently, inspect meats and exclude such as has become damaged and unwholesome. They may inspect Texan cattle and exclude those that are in fact diseased. They may inspect spirituous or malt liquors and exclude such as are adulterated with poisonous or noxious chemicals injurious to public health, and they may inspect oleomargarine and exclude that which is colored in imitation of yellow butter and represented to be such.

In the case of *Bowman* v. *Chi. & N. W. Ry. Co.* (*supra*) Mr. Justice MATTHEWS, in delivering the opinion of the court, says : " Doubtless the states have power to provide by law suitable measures to prevent the introduction into the states of articles of trade which, on account of their existing condition, would bring in and spread disease, pestilence and death, such as rags or other substances infected with the germs of yellow fever or the virus of smallpox, or cattle or meat or other provisions that are diseased or decayed or otherwise, from their condition and quality, unfit for human use or consumption. Such articles are not merchantable ; they are not legitimate subjects of trade and commerce. They may be rightly outlawed as intrinsically and directly the immediate sources and causes of destruction to human health and life. The self-

protecting power of each state, therefore, may be rightfully exerted against their introduction, and such exercise of power cannot be considered regulations of commerce prohibited by the Constitution."

In *Railroad Co.* v. *Husen* (*supra*) it was held that while a state cannot, beyond what is absolutely necessary in self-protection, interfere with the transportation into or through its territory of articles of commerce, it may enact sanitary laws and, for the purpose of self-protection, establish quarantine and reasonable inspection regulations and prevent persons and animals having contagious or infectious diseases from entering its territory. Mr. Justice STRONG, in delivering the opinion of the court, says: "We are thus brought to the question whether the Missouri statute is a lawful exercise of the police power of the state. We admit that the deposit in Congress of the power to regulate foreign commerce and commerce among the states was not a surrender of that which may properly be denominated police power. What that power is it is difficult to define with sharp precision. It is generally said to extend to making regulations promotive of domestic order, morals, health and safety. As was said in *Thorp* v. *R. & B. R. R. Co.* (27 Vt. 149) 'it extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the state.' * * * Under it a state may legislate to prevent the spread of crime or pauperism or disturbance of the peace. It may exclude from its limits convicts, paupers, idiots and lunatics and persons likely to become a public charge, as well as persons afflicted by contagious or infectious diseases. * * * The same principle, it may also be conceded, would justify the exclusion of property dangerous to the property of citizens of the state, for example animals having contagious or infectious diseases."

In the case of *Powell* v. *Penn.* (127 U. S. 678) Mr. Justice HARLAN, in considering the statute of Pennsylvania prohibiting the sale of oleomargarine as imitation butter, says: "It is scarcely necessary to say that if this statute is a legitimate exercise of the police power of the state for the protection of

the health of the people and *for the prevention* of fraud, it is not inconsistent with that amendment," referring to the Constitution of the United States.

In the case of *Schollenberger* v. *Penn.* (*supra*) Mr. Justice PECKHAM, in holding that the statute of Pennsylvania was unconstitutional in absolutely prohibiting the manufacture and sale of oleomargarine, says : " In the execution of its police powers we admit the right of the state to enact such legislation as it may deem proper, even in regard to articles of interstate commerce, for the purpose of *preventing fraud or deception* in the sale of any commodity and to the extent that it may be fairly necessary to prevent the introduction or sale of an adulterated article within the limits of the state."

In the case of *Plumley* v. *Mass.* (155 U. S. 461) it was held that a statute of that state to prevent deception in the manufacture and sale of imitation butter, in its application to the sales of oleomargarine artificially colored so as to cause it to look like yellow butter and brought into Massachusetts, is not in conflict with the clause of the Constitution of the United States investing Congress with the power to regulate commerce among the several states.   Mr. Justice HARLAN in delivering the opinion of the court in that case, says : " The statute seeks to suppress false pretences and to promote fair dealing in the sale of an article of food.   It compels the sale of oleomargarine for what it really is, by preventing its sale for what it is not.   Can it be that the Constitution of the United States secures to any one the privilege of manufacturing and selling an article of food in such manner as to induce the mass of people to believe that they are buying something which, in fact, is wholly different from that which is offered for sale ?   Does the freedom of commerce among the states demand a recognition of the right to practice a deception upon the public in the sale of any articles, even those that may have become the subject of trade in different parts of the country ? "   He then proceeds to show by a consideration of the cases that the Constitution of the United States does not prohibit the states from enacting laws

to prevent fraud and deception in the sale of articles of commerce.

It appears to us that this case cannot, in principle, be distinguished from the action we have before us for determination and that it settles the question as to the validity of our statute. The right of a state, under the police powers reserved, to enact laws to prevent fraud and deception in the sale of articles of food, as well as to preserve the public health, is not only conceded by these authorities but expressly held to exist. The coffee tendered by the plaintiffs, which was rejected, was of a low grade, containing many poor, withered and black beans. It, confessedly, was colored and the beans coated with a yellowish substance. It is not contended that the coloring matter improved the taste or added to the value of the coffee. It is claimed that the only purpose of the coloring was to hide the character of the poor beans and to make them appear of the same character as the good coffee. The jury has found by its verdict that it was so colored as to conceal the damaged portions or made it to appear better than it really was, or of greater value to the ordinary untrained observer. In other words, that it was adulterated for the purposes of fraud and deception. This, we think, the legislature had the right to prevent.

We have considered the other questions discussed upon the argument of this appeal, but have reached the conclusion that there were no errors committed which were prejudicial to the appellants, or of sufficient importance to require a new trial.

The judgment should be affirmed, with costs.

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.