■ 45-02 Food Corp., Respondent-Appellant, v 45-02 43rd Realty LLC, Appellant-Respondent. [830 NYS2d 304]—

In an action, inter alia, for a judgment declaring the rights of the parties under a lease, the defendant appeals from so much of an order of the Supreme Court, Queens County, (Rosengarten, J.), dated August 9, 2005, as granted that branch of the plaintiff's motion which was for summary judgment declaring that the plaintiff is entitled to offset, against its additional rent obligation, real estate taxes paid by its subtenant, and denied that branch of the defendant's cross motion which was for summary judgment declaring that the plaintiff is not entitled to offset, against its additional rent obligation, real estate taxes paid by the plaintiff's subtenant, and the plaintiff cross-appeals from stated portions of the same order which, inter alia, denied that branch of its motion which was for summary judgment declaring that it is not obligated to pay additional rent to the defendant calculated as a percentage of the sales of the plaintiff's subtenant, and granted that branch of the defendant's cross motion which was for summary judgment declaring that

the plaintiff is obligated to pay additional rent to the defendant calculated as a percentage of the sales of the plaintiff's subtenant.

Ordered that the order is modified, on the law, (1) by deleting the provisions thereof denying that branch of the plaintiff's motion which was for summary judgment declaring that it is not required to pay additional rent to the defendant calculated as a percentage of the sales of the plaintiff's subtenant and granting that branch of the defendant's cross motion which was for summary judgment declaring that the plaintiff is required to pay additional rent to the defendant calculated as a percentage of the sales of the plaintiff's subtenant, and substituting therefor a provision granting that branch of the motion and denying that branch of the cross motion, and (2) by deleting the provision thereof granting that branch of the plaintiff's motion which was for summary judgment declaring that the plaintiff is entitled to offset, against its additional rent obligation, real estate taxes paid by its subtenant and denying that branch of the defendant's cross motion which was for summary judgment declaring that the plaintiff is not entitled to offset, against its additional rent obligation, real estate taxes paid by the plaintiff's subtenant, and substituting therefor a provision denying that branch of the plaintiff's motion and granting that branch of the defendant's cross motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for entry of a judgment declaring that the plaintiff is not required to pay additional rent to the defendant calculated as a percentage of the sales of the plaintiff's subtenant, and that the plaintiff is not entitled to offset, against its additional rent obligation, real estate taxes paid by the subtenant.

In 1973, Milbern Mercantile Ltd. (hereinafter Milbern), as landlord, and the supermarket chain The Bohack Corporation (hereinafter Bohack), as tenant, entered into a lease with respect to certain commercial real property in Sunnyside, Queens. The initial term of the lease was for 26 years and expired on January 31, 1999. The lease granted Bohack the option, over several renewal periods, to extend the term for up to 50 additional years. During the initial term, Bohack was responsible for paying, inter alia, a fixed annual rental of $49,252 and the real estate taxes for the premises.

Pursuant to paragraph 3 of the lease, the fixed annual rental increased to $50,000 during any renewal period. Pursuant to paragraph 4 of the lease, Bohack, as "the Tenant," became obli-

gated to pay, as additional rent for each year of any renewal period, a sum "equivalent to the amount, if any, by which one and one quarter percent (1¼%) of the gross sales (as defined in subparagraph (b) . . .) shall exceed the fixed annual rent for each lease year." Subparagraph 4 (b) of the lease defines "Gross Sales" as "the gross receipts of Tenant in and from the Demised Premises." Subparagraph 4 (d) of the lease permits "the Tenant" to offset, against its obligation to pay additional rent (hereinafter Percentage Rent), the real estate tax payments "paid by Tenant and applicable to said lease year."

Following a series of assignments, the plaintiff acquired Bohack's interest in the lease, and the defendant acquired Milbern's interest. In 1995, the plaintiff ceased its supermarket operations at the premises, and entered into a sublease with Rite Aid of New York, Inc. (hereinafter Rite Aid). When the Percentage Rent provision of the original lease went into effect after January 31, 1999, the plaintiff took the position that this provision required the Percentage Rent to be calculated only upon its own gross receipts, and hence only upon the rental income it received from the Rite Aid sublease, but not upon Rite Aid's gross receipts from sales at the premises. The defendant notified the plaintiff that it was terminating the lease for nonpayment of Percentage Rent, and the plaintiff commenced this action for a judgment declaring the rights of the parties under the original lease. The Supreme Court held that the plaintiff's Percentage Rent obligation must be calculated on the basis of Rite Aid's gross sales, but that the plaintiff could offset, against that obligation, any real estate taxes paid by Rite Aid. We modify.

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent. The best evidence of what parties to a written agreement intend is what they say in their writing. [A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. . . .

"Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide. A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion. Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (*Greenfield v Philles Records*, 98 NY2d 562, 569-570 [2002]) (internal quotation marks and citations omitted).

"In interpreting the provisions of a lease, the court should refrain from rewriting the lease under the guise of construction, should not construe the language of the lease in such a way as would distort its meaning, and should not construe the language in a manner that would render one or more of its provisions meaningless" (*Poughkeepsie Sav. Bank v G.M.S.Y. Assoc.*, 238 AD2d 327, 327 [1997]).

Here, subparagraph 4 (b) of the lease defines the term "Gross Sales" as "the gross receipts *of Tenant* in and from the Demised Premises" (emphasis added). Additionally, subparagraph 4 (d) states that the "Tenant" is responsible for submitting a statement "of the 'Gross Sales' *achieved by the Tenant*" at the premises (emphasis added). Contrary to the defendant's contention, "Tenant" is not a generic term denoting any entity conducting sales on the premises. The term "Tenant," as used in the lease, and as defined in the preamble to the lease, refers specifically to Bohack, and does not include subtenants. The language of the lease indicates that the intent of the original parties to the agreement was to limit the basis for Percentage Rent to Bohack's receipts. Because Bohack's interest in the lease was assigned to the plaintiff, the lease limits the basis of the Percentage Rent calculation to the plaintiff's gross receipts "in and from" the premises, and does not require the plaintiff to pay Percentage Rent based upon Rite Aid's sales at the premises.

The defendant's argument that the sales of a subtenant are not listed among the exclusions from "Gross Sales" set forth in subparagraph 4 (b) ignores the fact that the precise definition of "Gross Sales" provided by the lease already restricts "Gross Sales" to the gross receipts of the "Tenant." Under this definition of "Gross Sales," a subtenant's sales are automatically excluded by the scope of the term as defined by the lease.

The defendant's contention that the original parties to the lease intended to guarantee that Percentage Rent based on all sales at the premises would serve as an upward adjustment to the fixed annual rental is not supported by the language of the agreement. Subparagraph 4 (a) states that Percentage Rent is equivalent to "the amount, *if any*" by which $1^{1}/4\%$ of the gross sales exceeds the fixed annual rent (emphasis added), and subparagraph 4 (d) states that within 60 days of the end of the lease year, the Tenant is to submit the percentage rent "to which Landlord shall be entitled, *if any*, for said expired year" (emphasis added). Additionally, Bohack was not required to maintain a retail operation on the premises; paragraph 5 of the lease permits the Tenant to use the premises "for any lawful

purpose." Together, these provisions indicate that both parties entered into the original agreement contemplating the possibility that the fixed annual rental might not be supplemented by Percentage Rent payments based on sales at the premises.

The plaintiff, however, is not entitled to offset real estate taxes paid by Rite Aid against its Percentage Rent obligation because the specific definition of "Tenant," as set forth in the preamble, applies with equal force to the tax offset provision of the lease. Subparagraph 4 (d) of the lease states that the percentage rent payment "shall be reduced by any Real Estate taxes and insurance on the building, *paid by Tenant . . .*" (emphasis added). Accordingly, this provision restricts the tax payments eligible for offset to those actually paid by Bohack or its assignees.

Nevertheless, there are issues of fact as to whether the plaintiff owes Percentage Rent to the defendant for the lease years in dispute. Accordingly, the Supreme Court properly denied that branch of the plaintiff's motion which was for summary judgment declaring that it does not owe the defendant any portion of Percentage Rent (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

The plaintiff's contention concerning the statute of limitations applicable to the defendant's counterclaims is raised for the first time on appeal, is thus not properly before us, and is without merit in any event. The parties' remaining contentions are without merit, or do not compel further modification of the Supreme Court's order.

Because this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Queens County, for the entry of a judgment declaring that the plaintiff is not obligated to pay additional rent to the defendant calculated as a percentage of the sales of the plaintiff's subtenant, and that the plaintiff is not entitled to offset, against its additional rent obligation, real estate taxes paid by the plaintiff's subtenant (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]). Crane, J.P., Rivera, Goldstein and Dickerson, JJ., concur.