86th, LLC v Clean Rite Ctrs.-2519 86th St., LLC (2025 NY Slip Op 50060(U))

[*1]

86th, LLC v Clean Rite Ctrs.-2519 86th St., LLC

2025 NY Slip Op 50060(U)

Decided on January 21, 2025

Civil Court Of The City Of New York, Kings County

Waterman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 21, 2025
Civil Court of the City of New York, Kings County

86th, LLC, Petitioner(s),

against
Clean Rite Centers-2519 86th St., LLC; XYZ Corp, Respondent(s).

Index No. LT-328122-23/KI

Counsel for Plaintiff, Balsamo, Rosenblatt & Hall, P.C by Zachary Hall, Esq., and Counsel for Defendant, Mark Friedlander, Esq.

Lola Waterman, J.

Upon the foregoing cited papers, oral arguments, and careful review of the papers and opposition thereto, the Decision/ Order on Respondent's motion for partial summary judgment is denied in part, and granted to the extent herein for the following reasons:
PROCEDURAL HISTORY
This commercial landlord tenant matter was commenced on September 18, 2023, with the filing of the Notice of Petition of non-payment of water charges pursuant to a lease agreement. On October 23, 2023, Respondent filed a Verified Answer with Counterclaims and issue was joined. On September 24, 2024, Respondent filed a motion for partial summary judgment pursuant to CPLR 3212(a). Plaintiff opposed. During oral arguments on November 15, 2024, the parties represented to the court that the complaint was previously dismissed on August 7, 2024, and only Respondent's counterclaims remain.
ARGUMENTS
Respondent argues that it is entitled to credit on its water and sewer charges. Specifically, Respondent argues that pursuant to the parties' lease agreement ("Lease"), Respondent was only responsible for its pro rata share of 33.75%, instead of 100% of the water and sewer charges Petitioner billed Respondent. Respondent continued that the bills provided were calculated at 100% of the water consumption for the entire building, leading to an overcharge. Respondent alleges a further overcharge occurred when Petitioner failed to share a 20% discount rate applied to the sewer charges by the New York City Department of Environmental Protection/Water Board ("DEP"). Respondent argues that pursuant to the parties' fully executed Lease, Article 6(A) limited Respondent's liability for water and sewer charges to 33.75% of the increase of the water and sewer charges over the base year 2009/2010 [*2]but that Petitioner has never sent a bill for the base year from which Respondent's liability could be calculated. Respondent proffers that being billed for 100% of the water and sewer charges created an overpayment not contemplated in the Lease.
Petitioner opposes, arguing that Respondent failed to make a prima facie showing entitling it to partial summary judgment as Respondent's claim for overcharge of the water and sewer has no merit, pursuant to Articles 4 (b) and 39 of the Lease. Petitioner argues that within Article 39, Respondent is responsible for all utility services, and this is accomplished through their designated meter. Petitioner continues that because Respondent pays for water and sewer based on its assigned meter, water and sewer would not be considered under the Lease's Article 6(A) definition of "Taxes." Petitioner states that after purchasing the property in 2012, the water charges were assumed based on the actions of its predecessor-in-interest and the conduct of the Respondent. Petitioner further states that even assuming paying 100% of the water charges was not the original intention of the parties, Respondent "impliedly ratified the modification of the lease" by knowingly remitting payment of 100% of the water and sewer charges for the last five (5) years.
In its Reply, Respondent surmises that any arguments presented by Petitioner outside of its reliance on Article 6(a) of the Lease are irrelevant. Specifically, Respondent states that Petitioner's use of red herrings, i.e., ambiguous lease provisions like Articles 4 (b) and 39, should not be considered by the court as it is an attempt by Petitioner to deflect the Court's attention from the real issue: water and sewer charges under Article 6(a). Respondent argues that Petitioner has not provided any proof or evidentiary facts sufficient to defeat Respondent's motion, nor has Petitioner refuted the claim that the 20% discount rate from the DEP was never extended to Respondent. Respondent argues it is disingenuous of Petitioner to reference Articles 39 and 4(b) of the Lease as those provisions were not referenced in the rent demand or petition. Respondent continues that the overcharge is evidenced by DEP's bill which shows a credit of 20%, and that the credit was not reflected in the water meter reading statement from "The Meter Reading Service," a servicer Petitioner utilizes to generate its water and sewer charges to its tenants.
DISCUSSION
Summary judgment is a drastic remedy and may be granted only when no triable issues of fact exist. CPLR 3212(a). Movants bear the initial burden of establishing their right to summary judgment as a matter of law by tendering sufficient evidence, in admissible form, to eliminate any material issues of fact. Alvarez v. Prospect Hosp., 68 NY2d 320 (1986). CPLR 3212(b) provides that such motion " shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions. The affidavit shall be by a person having knowledge of the facts; it shall recite all the material facts; and it shall show that there is no defense to the cause of action or that the cause of action or defense has no merit." (Emphasis added). In this regard, conclusory assertions are insufficient to demonstrate the absence of any material issues of fact. Ayotte v. Gervasio, 81 NY2d 1062 (1993). Failure to make the initial prima facie showing requires denying the motion, regardless of the sufficiency of the opposing papers. See, Winegrad v. New York Univ. Med. Ctr., 64 NY2d 851 (1985). Once the moving party satisfies this obligation, the burden shifts and the party opposing the motion must demonstrate by admissible evidence the existence of a bona fide factual issue. See, Xiang Fu He v. Troon Mgt., Inc., 34 NY3d 167 (2019).
Judicial Estoppel
First, the court addresses Respondent's arguments that Petitioner's opposition papers are inconsistent with its position in its petition and should be barred pursuant to the doctrine of judicial estoppel. The doctrine of judicial estoppel is based on the rule that when a party assumes a successful position in a legal proceeding, he or she is thereafter barred from asserting an inconsistent position which would result in injury to the original adverse party. 5 Warren's Weed New York Real Property § 48.19 (2024). Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed. Ford Motor Credit Co. v. Colonial Funding Corp., 215 AD2d 435 (2nd Dept., 1995). Indeed, the doctrine of judicial estoppel is intended to prevent abuses of the judicial system by which a party obtains relief by maintaining one position, and later, in a different action, maintains a contrary position. D & L Holdings, LLC v. RCG Goldman Co. LLC, 287 AD2d 65 (1st Dept., 2001), citing, Environmental Concern, Inc. v. Larchwood Constr. Corp., 101 AD2d 591 (2nd Dept., 1984).
Respondent argues that Petitioner is judicially estopped from now relying on Articles 39 and 4(b) of the Lease when it previously relied on Article 6 (A) of the Lease in its petition. Specifically, Respondent argues that Petitioner is judicially estopped from denying that the water and sewer charges are "taxes" as defined in Article 6 (A) of the Lease, having asserted and admitted in its Petition that the water and sewer charges were "taxes" under Article 6 (A) of the Lease.
While the court notes that neither of the parties attached the petition (nor the decision dismissing the petition which is currently not part of the court file) to their papers, Paragraph 5 of the Petition states that "[p]ursuant to section 6 (A) of the Lease Agreement Clean Rite is responsible for payment of water and sewer charges." Respondent has now filed a motion for summary judgment and in response to Respondent's argument that it had no obligation to pay water and sewer charges as "additional rent" under the Lease, Petitioner cites to Articles 39 and 4(b), not 6 (A), to support its argument that Respondent is in fact obligated to pay water and sewer charges as "additional rent," an argument Respondent claims is inconsistent with Petitioner's earlier position that the charges are "taxes" pursuant to Article 6 (A).
The court is aware that the doctrine of judicial estoppel has evolved over time such that a "judgment" is no longer a prerequisite to invoking judicial estoppel. D & L Holdings, LLC, supra. However, the court does not see inconsistencies with Petitioner's arguments. Petitioner's position has always been that Respondent is obligated to pay water and sewer charges. Whether it cites to Articles 39 and 4(b) or Article 6 (A) of the same lease does not make Petitioner's position inconsistent, and considering Respondent's obligation as a whole to pay water and sewer charges, the court finds that there is no reason to invoke judicial estoppel here. This would be different had Petitioner argued Respondent was obligated to pay water and sewer charges but now argues that Respondent is not obligated to pay water and sewer charges. That would be inconsistent. Simply citing another section of the Lease in opposition to a motion for summary judgment does not rise to the level contemplated by the doctrine of judicial estoppel and does not perpetuate any abuses on the judicial system.
Lease Ambiguity
The Second Department has held that "[i]n interpreting the provisions of a lease, the court should refrain from rewriting the lease under the guise of construction, should not construe the language of the lease in such a way as would distort its meaning, and should not construe the [*3]language in a manner that would render one or more of its provisions meaningless." Poughkeepsie Sav. Bank F.S.B. v. G.M.S.Y. Assocs., 238 AD2d 327 (2nd Dept., 1997). Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide.
A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself and concerning which there is no reasonable basis for a difference of opinion. 45-02 Food Corp. v. 45-02 43rd Realty LLC, 37 AD3d 522 (2nd Dept., 2007). Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity. Id., citing, Greenfield v. Philles Records, 98 NY2d 562 (2002). "Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." Genovese v. Axel, 40 AD3d 693 (2nd Dept., 2007).
Article 4 of the subject Lease states in pertinent part:
Rent Payment Obligation.
(a) Tenant shall pay to Landlord the sums set forth in Section 5 as Fixed Rent, and the sums set forth in Section 6 as Additional Rent, as and when due. Fixed Rent and Additional Rent are collectively referred to as "Rent" in this Lease.
(b) The term "Additional Rent" shall mean all sums of money, costs, expenses or charges of any kind or amount whatsoever (other than Fixed Rent) that Tenant is obligated to pay to Landlord pursuant to this Lease. If Tenant fails to pay any Additional Rent, Landlord shall have the same rights and remedies under this Lease as in the case of non-payment of Fixed Rent. (Emphasis added)
Article 6 of the subject Lease states in pertinent part:
A. Taxes. Tenant shall pay to Landlord Tenant's Tax Payment as Additional Rent, in accordance with the following provisions:
(a) "Taxes" shall mean all real estate taxes, assessments, water and sewer rents and other governmental impositions and charges (but excluding any discounts not received or taken by Landlord) which shall or may, during the Term of this Lease, be levied, assessed, imposed, become due and payable, or liens upon, or arising in connection with, the use, occupancy or possession of or become due and payable out of, or for, the Property (including the common areas thereof) or any part thereof. Taxes shall not include any water and sewer charges if Tenant pays water and sewer charges affecting the Premises separately, nor shall "Taxes" include inheritance, estate, succession, transfer, gift, franchise, corporation, income or profit tax or capital levy that is or maybe imposed upon Landlord. In addition, Taxes shall not mean water and sewer charges to the extent that Tenant pays for water and sewer charges affecting the Premises separately.
(e)"Tenant's Pro Rata Share" shall mean Thirty-Three and Seventy-Five One Hundredths percent (33.75%). Tenant's Pro Rata Share wjll be adjusted to reflect any expansion of the Building. (Emphasis added).
Article 39 of the subject Lease states:
Utilities. At any time after the Commencement Date, if in the event Tenant requires additional or replacement utility connections for the Premises or the installation of vents that require placement of pipes and connections through Common Areas, the Parking Lot, or the basement space of the Building, Landlord agrees to permit placement of, and access to, such utilities, pipes and connections by Tenant, at Tenant's expense. Tenant shall be responsible for the prompt repair of damage to and restoration of the Building resulting from the work described in this Section 39. Tenant shall pay all charges for utility services to the Premises after the Commencement Date. (Emphasis added).
Preliminarily, in interpreting the Lease and considering the issues the court must decide within the plain meaning of the Lease, the court fails to see the relevance of Article 39 to the issues at hand. The first sentence in the Article is a conditional statement that expresses a cause-and-effect or logical relationship between two propositions, to wit: if Respondent requires additional or replacement utility connections after the commencement date of the Lease, Petitioner will permit access and Respondent must cover all expenses associated with these additional or replacement utility services. The interpretation given to "utility services" in the last sentence of Article 39 is that if Respondent requires additional or replacement utility connections, service charges for those modifications are Respondent's obligations. Since neither side has brought up any issues concerning additional or replacement utility connections, the court will no longer expend time on this provision.
The plain reading of Article 6 is that, generally, taxes include water and sewer charges except where Respondent pays its water and sewer charges separately. If Respondent pays its water and sewer charges separately, then subsection (e) does not apply. Conversely, if Respondent does not pay its water and sewer charges separately, then it would be responsible for its pro rata share of said charges. The question, therefore, is does Respondent pay its water and sewer charges separately? If the answer is in the affirmative, then its obligation is delineated in Article 4(b). If in the negative, then it should be pursuant to Article 6(A).
Based on the record before the court, it is unclear if Respondent pays its water and sewer charges separately. Respondent argues that the bills attached to its moving papers are for the entire building but has not made a prima facie showing that those bills are the only water and sewer charges generated by DEP that are sent to the building, or stated differently, that the other two tenants and the landlord do not receive bills of their own. The court also does not agree with Petitioner's interpretation of Article 6(A) which states in no uncertain terms that water and sewer charges will not be deemed "tax" if Respondent pays for those charges separately. Petitioner cannot simultaneously take the position that while Respondent has its own meter and is therefore exempt from paying water and sewer charges under 6(A) that Respondent must nevertheless be held responsible for a pro rata share of the charges to Petitioner's meter under 6(A)(e). And while Article 4 describes the meaning of "additional rent," Petitioner fails to point to where in the Lease it states Respondent's obligation under the Lease included a mandatory pro rata share of the water and sewer charges to Petitioner's meter.
There is no clear language within the Lease that shows the parties intended for Article 6(A)(a) to be contained within itself when referring to the water and sewer charges. And in any event, the court is mandated not to construe the language in the Lease in a manner that would [*4]render one or more of its provisions meaningless. It is within the rules of negotiating that we see "the strong preference for [the] freedom of contract in the creation of leases, and although it may seem harsh for tenants, the courts assume that the parties have knowingly bargained for the provisions of their agreement. Eujoy Realty Corp. v. Van Wagner Communications, LLC, 22 NY3d 413 (2013). This is especially true in the case of arm's length commercial contracts negotiated by sophisticated and counseled entities. Id. at 413, citing, Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685 (1995). Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. "If they are dissatisfied . . . , 'the time to say so [is] at the bargaining table.' " (Oppenheimer, supra, quoting, Maxton Bldrs. v. Lo Galbo, 68 NY2d 373 [1986]).
The court finds that the subject terms of the Lease are unambiguous and taking into consideration the parties' obligations as a whole under the Lease, and the intention of the parties as manifested, Respondent is not obligated to pay water and sewer charges as "taxes" under 6(A) if it is paying it separately. Consequently, Respondent is not obligated to pay a pro rata share of the charges to the landlord's meter. On the other hand, if it is established that Respondent does not pay water and sewer charges separately, then not only will Article 6(A) apply, but it would also support Respondent's overcharge claim.
On its counterclaims, Respondent has the burden of proof to establish its overcharge claim by showing that it was only liable for its pro rata share of the bills because it does not pay its water and sewer charges separately, meaning Respondent is paying the water and sewer charges for the entire building. Or consistent with the court's findings above, that it has a separate meter and should be exempt under Article 6(A) from paying a pro rata share of the charges to Petitioner's meter. Respondent has not met that burden and its motion for partial summary judgment on that issue is denied.
Twenty Percent Discount
Respondent argues it is entitled to a 20% credit against the water and sewer charges it paid as Petitioner failed to discount the water and sewer bills by 20% as credited by DEP. In support of its argument, Respondent presents several DEP invoices reflecting a sewer allowance of 20% from the periods beginning December 26, 2018, through June 28, 2022, with some exceptions. The court finds that Respondent has established entitlement to relief for a 20% sewer allowance only for the period in which Respondent established DEP credited the subject account. Those months include December 26, 2018, to June 30, 2021, and September 29, 2021, through June 28, 2022. Petitioner has failed to present any evidentiary facts demonstrating a genuine issue of fact on this issue, and partial summary judgment is granted to Respondent to the extent herein.
CONCLUSION
Upon due deliberation, Respondent's motion for summary judgment is granted to the extent that it is entitled to a twenty percent credit on its water and sewer bills for the period beginning December 26, 2018, through June 30, 2021, and for the period beginning September 29, 2021, through June 28, 2022. The exact amount is to be determined at trial. Respondent's motion is denied in all other respects. The parties shall proceed to trial on all remaining issues.
This constitutes the decision and order of the Court.
Date: January 21, 2025
Hon. Lola Waterman
Civil Court Judge (NYC)