High Beam Coffee LLC v Global Roots LLC (2026 NY Slip Op 50040(U))

[*1]

High Beam Coffee LLC v Global Roots LLC

2026 NY Slip Op 50040(U)

Decided on January 13, 2026

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 13, 2026
Supreme Court, Kings County

High Beam Coffee LLC, Plaintiff,

againstGlobal Roots LLC, Defendant.

Index No. 534258/2025

Law Offices of Jaime Lathrop, P.C., Brooklyn (Jaime Lathrop of counsel), for plaintiff.Rivkin Radler LLP, Uniondale (Ari Katzap of counsel), for defendant.

Aaron D. Maslow, J.

The following papers were used on this motion: NYSCEF Doc Nos. 2-35.
Upon the foregoing papers, having heard oral argument, the Court having conducted an on-site view at the subject premises, and due deliberation having been had, the within motion is determined as follows.
IntroductionCoffee has not escaped the tribulations of litigation (see Crossman v Lurman, 171 NY 329 [1902] [low grade beans]; Greenwich Mills Co., Inc. v Barrie House Coffee Co., Inc., 91 AD2d 398 [2d Dept 1983] [allegation that former salesmen who had access to confidential information about customers' coffee blend preferences violated restrictive employment covenant]; Zarcone v Perry, 78 AD2d 70 [2d Dept 1980] [judge threatened coffee vendor, accusing him of watering down coffee]; Sanka Coffee Corp. v Broadway Subway Advertising Co., 221 AD 579 [1st Dept 1927] [advertising]; Clemente v Staten Island Univ. Hosp., 85 Misc 3d 1218[A], 2025 NY Slip Op 50226[U] [Sup Ct, Richmond County 2025] [personal injuries]; H Work, LLC v Current Affairs Times, 84 Misc 3d 1206[A], 2024 NY Slip Op 51370[U] [Civ Ct, NY County 2024] [payment]; Gorilla Coffee, Inc. v New York Times Co., 32 Misc 3d 1230[A],2011 NY Slip Op 51502[U] [Sup Ct, Kings County 2011] [dismiss action for defamation by closed coffee shop]).
This motion concerns the vicissitudes of opening up a coffee shop in Brooklyn.

Background
Plaintiff, intending to conduct a coffee shop business, entered into a commercial lease, as a tenant, with Defendant Global Roots LLC, the owner of the property located at 398 Court Street, which the Court notes is located in the Carroll Gardens neighborhood of Brooklyn. That part of the property which was leased was the ground floor (street level) and backyard of the building as well as an existing three-compartment sink in the basement. The commencement date was September 9, 2025. The fixed rent commencement date was November 1, 2025. Plaintiff would be deemed in possession as of September 1, 2025, and Defendant had until September 30, 2025 to fully vacate its personal property. Previously, Defendant was using the ground floor for her own commercial business. Shortly after the execution of the lease, disputes arose between the parties.
This action was commenced by Plaintiff High Beam Coffee LLC on October 1, 2025, through the filing of a summons and complaint. Motion papers seeking injunctive relief were filed by Plaintiff on the same day, October 1, 2025, and the order to show cause bringing on the motion was signed then. The motion sought:
(1) granting a preliminary injunction, stay, or temporary restraining order enjoining Defendant from interfering with Plaintiff's buildout of the leased premises located at 398 Court Street, Brooklyn, New York 11231, further (2) directing Defendant to remove its personal property from the Premises, or in the alternative authorizing Plaintiff to remove such property, and (3) tolling the buildout period and rent commencement date under the Lease until Defendant has complied with its obligations, (4) together with such other and further relief as this Court deems just and proper (NYSCEF Doc No. 12 at 1).Pending the hearing, Defendant was enjoined as follows:
a) Temporarily, preliminarily and permanently enjoining Defendant from interfering with Plaintiff's buildout of the leased premises located at 398 Court Street, Brooklyn, New York 11231; andb) Temporarily, preliminarily and permanently directing Defendant to remove its personal property from the Premises, or in the alternative authorizing Plaintiff to remove such property; andc) Temporarily, preliminarily and permanently tolling the buildout period and rent commencement date under the Lease until Defendant has complied with its obligations under the Lease (id. at 2).The motion came before the undersigned on December 12, 2025, whereupon the Court heard argument from counsel. Being of the notion that to fully comprehend the details of the dispute between the parties, the Court continued the matter to December 16, 2025, so that it could conduct an on-site view and perhaps take testimony. Accompanied by staff and court officers, the Court indeed conducted the on-site view and took testimony.

Movant's Contentions
Viki Forshee, a member of the plaintiff LLC, attested to various matters in affirmations, among them being the following:
• The lease provided for a rent-free buildout period, i.e., a period of time to set up the coffee shop without having to pay rent.• Defendant failed to vacate the leased premises by leaving behind large items, which [*2]prevented Plaintiff using the leased premises as intended, and Defendant prevented Plaintiff from discarding these items.• Defendant demanded that Plaintiff refrain from making cosmetic alterations, including painting, shelving, and cabinetry, even thought the lease permitted this without Defendant's consent.• Defendant interfered with Plaintiff's contractors, including a licensed electrician.• Due to Defendant's interference, Plaintiff could not proceed with the buildout, obtain required regulatory approvals, or open the coffee shop.• Defendant's hoard in the basement violates the lease and safety codes; this includes items in front of the electrical panel, and expired food elsewhere in the basement which invites vermin, impeding Plaintiff's ability to comply with Sanitation Department regulations.

 Defendant's Contentions in Opposition
Wen-Jay Ying, a member of the defendant LLC, attested to various matters in her affirmation, among them being the following:
• Almost immediately from the beginning of the landlord-tenant relationship, Plaintiff began to violate the lease.• Plaintiff removed a handmade section of the bar in the leased ground floor premises, a fixture, without Defendant's knowledge or approval, allegedly in violation of the lease which expressly prohibits removal of fixtures.• Plaintiff removed a neon sign in contravention of the lease provision prohibiting removal of neon signage.• Plaintiff performed electrical work before providing the required permits to Defendant.• Plaintiff made a hole in the basement ceiling and caused a water leak by the walk-in cooler there.• Defendant demanded that Plaintiff stop its work until all plans and drawings were approved as required in the lease.• Plaintiff's ability to make cosmetic changes was conditioned on its compliance with other lease provisions, which did not occur.• Defendant cleared out its property from the backyard and near the basement's three-compartment sink.• As for remaining Defendant property in the basement, Defendant was entitled to keep it there and Plaintiff could not dictate what was to remain in the areas not by the three-compartment sink.

 December 16, 2025 Visit and Contentions
Holding court in the premises, the Court reviewed the issues with the parties. Plaintiff maintained that clutter in the basement impairs its ability to operate because food establishments need clear floors to inhibit infestation from vermin. Either the clutter needed to be placed on stands or removed. There were also items in the boiler and sprinkler rooms.
Defendant maintained that the items in the various locations in the basement were its property. Plaintiff is entitled to access only the three-compartment sink in the basement, and Plaintiff has access to it. One does not need Department of Health (DOH) approval to open. The coffee shop could be opened and then the Health Department will inspect. If a violation is issued, there will be time to cure. One first needs to see if there is a violation and then, if so, it can be cured. Meanwhile all of Plaintiff's property in the basement should remain there as the [*3]tenant has no rights to the basement other than access to the three-compartment sink.
Following a visit by all (Court, staff, officers, parties, and attorneys) to the basement, Plaintiff argued that there are remnants of Defendant's old business still there, including buckets, old signs, bags, a stroller, and other things. The basement needed to be DOH-compliant. Whatever is on the basement floor should be elevated on risers. Defendant countered that it runs a business and the basement is to be used for it — it is the property of Defendant, emphasizing that Plaintiff is not deprived of access to the three-compartment sink. Plaintiff could install a sink on the ground floor instead, maintained Defendant. Defendant argued that Plaintiff knew there was no sink on the ground level and that they would have access to the basement three-compartment sink. Plaintiff now insisted on putting pipes in the first floor in the location opposite of where the piping is presently situated. A way to deal with this would be for Plaintiff to install a three-part sink on the ground level albeit in a location other than where Plaintiff would want it, argued Defendant. Plaintiff replied that all that was needed was permission from Defendant to run a 16-inch extension in order to run a coffee machine; after all, this was a coffee business. If cooperation is not forthcoming from Defendant, then Plaintiff needed the Court's consent. Defendant retorted that a plan and a licensed plumber were needed. There then ensued argument regarding the ground floor situation. Plaintiff argued that it needed to install pipes for a sink; Defendant had been nonresponsive with respect to this.
There was also a dispute over the outside signage remaining on the building, claimed Plaintiff. Defendant denied opposing covering up the outside signage. There was a smaller, dangling sign which would be removed. Since Defendant operates a business from the basement it needs signage outside. Plaintiff could install an awning covering Defendant's sign. Plaintiff could also install window decals, argued Defendant.

December 16, 2025 Testimony
Seated at a customer table with chairs nearby, the Court then took testimony from principals of the disputing parties. Selina Ullrich, an owner of Plaintiff, testified first as Plaintiff's coffee expert.[FN1]
The hole in the basement ceiling complained of by Defendant was not created by Plaintiff, its workers, or its contractors. Plaintiff needs to install an espresso machine and what is called a batch coffee brewer, and they needed to be plumbed. Permits to perform plumbing work were not sought yet because Defendant had not yet granted permission. Plaintiff also wanted to paint over the outside signage, but Defendant insisted on a certain color paint with respect to painting a sign outside. Defendant objected to painting over one of the signs. Ms. Ullrich was told that Defendant's business, "Local Roots," had to have a sign outside.[FN2]

Ms. Ullrich testified that placing a three-compartment sink in the location on the ground [*4]floor recommended by Defendant would be challenging. It would be difficult to get dishes in and out because dishwashers would have to traverse the area where customers sit and eat. Also the room would have to be tiled to make it steam- and heat-resistant.
On cross-examination, Ms. Ullrich conceded that she examined the basement before entering into the lease and thought she could work with the landlord. Despite seeing what was stored in the basement she still signed the lease. When the lease was signed, Plaintiff contemplated using the three-compartment sink in the basement. But even if it were to be used, piping was still needed on the ground floor in the bar area. To operate a café, coffee brewing equipment is needed and extending the plumbing is necessary. Plaintiff performed cosmetic work, as the lease permitted it. In October, the landlord was not being responsive.
Wen-Jay Ying, a member of the LLC owning the property, testified for Defendant. She operates Local Roots from the basement. It was in business for 14 and a half years. She also ran a café that served coffee and tea on the ground floor before renting it out to Plaintiff. Food prep had been done in the basement, and serving took place on the ground level. Defendant was never cited with any violations despite there being stored items in the basement. Prior to renting the premises, Plaintiff saw the basement at least two times. The lease was negotiated with Ms. Ullrich and her partner Viki through Ms. Ying's real estate agent. An attorney for Defendant did draft the lease. Plaintiff was not represented by an attorney and took the lease as is.
Ms. Ying testified that the rent was $2,000 lower than comparable amounts in the neighborhood because she would always be using the basement for her own business. Prior to the temporary restraining order (TRO) in the order to show cause, she had been discussing paint colors with Viki. Ms. Ying wanted to retain the Local Roots name outside because she received active deliveries and her business is still active, operating from the basement. Plaintiff was welcome to have window decals and an awning as long as there were permits and everything was approved. She had asked for drawings of the awning and proposed signage. Communication stopped when the TRO was filed.
The dangling sign could be painted over, testified Ms. Ying, but it would need to be repainted at the end of the lease term. She had no problem with extending the plumbing so Plaintiff could have an espresso machine if they could show permits, Workers' Comp was complied with, and everything was done up to code. Some of what was wanted by Plaintiff, such as a sink on the first floor, was disclosed only the previous Friday. If Plaintiff ends up using the three-compartment sink in the basement, Defendant would occasionally be using it also. She wanted no more liabilities after seeing the basement ceiling hole and the broken water pipe from the walk-in cooler. A lot of work was being done which was not up to code. It was her responsibility as the landlord to make sure it was. She accused Plaintiff of performing work without a certificate of insurance. The electricians were not approved by her agent before work was performed. The back bar — an arch — was removed and it was a fixture — not cosmetic. Plaintiff removed an expensive neon Bok Choy sign. Ms. Ying wanted to make sure that everything was done properly. Viki had said that documentation would be sent and when it was not sent she became worried.
On cross-examination, Ms. Ying testified that she wanted a way to ensure Plaintiff actually followed through with their word before permitting Plaintiff to paint over the sign. While she would be amenable to moving possessions laying on the floor higher by placing them on risers, Ms. Ying felt that it would be a lot better if Plaintiff had their own sink built on the ground level. She did not want her work belongings tampered with. A 16-inch extension of the [*5]waterline would not be objected to if Plaintiff got licensed plumbers and presented their plans. However, it would be better for Plaintiff to have their three-compartment sink at ground level. She could not be downstairs all the time to ensure that none of her work equipment was tampered with.
Finally, counsel argued over the rent abatement issue — that Plaintiff wants an abatement because it did not have a rent-free period to perform the buildout.

 Findings of Fact
The Court finds as follows:
The subject premises is the building located at 398 Court Street, Brooklyn, New York. Plaintiff High Beam Coffee LLC, as tenant, and Defendant Global Roots LLC, as owner and landlord, entered into a store lease with a commencement date of September 9, 2025. The fixed rent commencement date was November 1, 2025. The lease expires on August 31, 2030. Those parts of the building which were leased were the ground floor, the backyard, and the existing three-compartment sink in the basement. The lease is clearly oriented toward the benefit of Defendant, based on its various provisions requiring consent by Defendant. It is evident from the surrounding factors that Ms. Ying wants to maintain as much control over the property as possible, even as she leased out parts of it to be used as a coffee shop by Plaintiff. The Court discerns this from Defendant having control over the signage, including having wanted the neon Bok Choy sign to remain, insisting on storing a lot of materials, including personal items, in the basement, and desiring to also use the three-compartment sink. Perhaps Ms. Ying was reluctant to let go of the ground level, where she had to close down her own café.[FN3]

Ms. Ying did not remove all of her property from the ground floor, including the backyard, by the deadline in the lease, as it remained into December. However, by the day of the on-site visit, Defendant's property was gone from the ground floor and the backyard. There is a lot of clutter in the basement. However, there is access from the bottom of the stairway going down to the basement along a short distance to the three-compartment sink.
Ms. Ying first heard about Plaintiff's desire to extend piping on the ground level the Friday before the on-site view. Thus, when the order to show cause was submitted to the Court on October 1, 2025, no dispute over extending piping on the ground floor had existed. Ostensibly, Ms. Ying appeared to be flexible about the signage for Plaintiff. However, the Court finds a reluctance to permit Plaintiff to paint over her old signage, this being indicated by Ms. Ying's needing a way to ensure that Plaintiff followed through with their word. Seemingly, Ms. Ying also appeared accommodating with respect to her stuff on the basement floor although there was reluctance to move it, indicated by her preferring that Plaintiff not even be downstairs; they should have a three-compartment sink on the ground level. Presumably if that were the case, then, Ms. Ying could leave her stuff on the floor.
Plaintiff entered into the agreement without an attorney and knowingly executed the lease after having viewed the premises, including the hoard of items in the basement. Plaintiff believed that matters could be worked out mutually between the parties even if not strictly according to lease provisions. Plaintiff did remove the neon Boy Choy sign, despite Lease § 3.7 prohibiting it. Plaintiff did remove an arch at the back bar, despite it being a fixture, without [*6]Defendant's consent, in violation of Lease § 5.1. However, neither Plaintiff nor its workers created a hole in the basement ceiling, as the Court credits Ms. Ullrich's testimony. Neither did they cause a leak by the walk-in cooler, a finding the Court makes by viewing the area and believing the wetness not to be of recent origin. It is evident that distrust developed between the two parties over Plaintiff's buildout of the coffee shop shortly after the lease was signed. It resulted in part from Plaintiff's unilaterally undertaking modifications, Defendant's suspicions over a certificate of insurance, Defendant's mistrust of Plaintiff, and Defendant's desire to retain supervisory control over the building. With this distrust, Defendant ascribed the hole and leak to Plaintiff.
At the close of the on-site view and the taking of testimony, it became apparent that there were four items of contention:
(1) The clutter in the basement, which Defendant insists on keeping there but which Plaintiff wants elevated on risers so as to obviate a Department of Health violation.
(2) Signage outside. Plaintiff wants to cover up or paint over Defendant's present signage.
(3) Extending piping on the ground level to facilitate a source of water for coffee machines.
(4) Plaintiff wanted a rent abatement for the period of time during which it claims it could not build out the coffee shop.

Discussion
The Appellate Division, Second Department, recently reiterated the prerequisites for a preliminary injunction:
" '[P]reliminary injunctive relief is a drastic remedy which will not be granted unless a clear right thereto is established under the law and the undisputed facts upon the moving papers, and the burden of showing an undisputed right rests upon the movant' " (Saran v Chelsea GCA Realty Partnership, L.P., 148 AD3d 1197, 1199 [2017], quoting Hoeffner v John F. Frank, Inc., 302 AD2d 428, 429-430 [2003]). "To establish the right to a preliminary injunction, the plaintiff must prove by clear and convincing evidence (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the grant of the injunction, and (3) a balance of the equities in the plaintiff's favor" (Keneally, Lynch & Bak, LLP v Salvi, 190 AD3d 961, 963 [2021]; see CPLR 6301). (Bilgrei v North Shore Tower Apts., Inc., 228 AD3d 814, 814-815 [2d Dept 2024].)In determining whether to grant a preliminary injunction to Plaintiff in the context of the within dispute over a commercial lease, the Court is mindful that "The rights and duties of landlord and tenant . . . are established by the terms of their contract" (150/160 Assoc. v Mojo-Stumer Architects, 174 AD2d 658, 659 [2d Dept 1991]; see Stamp Rite Tool & Die Corp. v Branded Leather, Inc., 236 AD3d 1076, 1078 [2d Dept 2025]). Additionally,
"[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms' " (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). "Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide . . . . A contract [*7]is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (Greenfield v Philles Records, 98 NY2d at 569, quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]). " 'In interpreting the provisions of a lease, the court should refrain from rewriting the lease under the guise of construction, should not construe the language of the lease in such a way as would distort its meaning, and should not construe the language in a manner that would render one or more of its provisions meaningless' " (45-02 Food Corp. v 45-02 43rd Realty LLC, 37 AD3d 522, 525 [2007], quoting Poughkeepsie Sav. Bank v G.M.S.Y. Assoc., 238 AD2d 327, 327 [1997]). (CDC Dev. Props., Inc. v American Ind. Paper Mills Supply Co., Inc., 184 AD3d 623, 624 [2d Dept 2020].)"In New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d 353, 356 [2019]). "[T]he unambiguous terms of a lease will not be disregarded for the purpose of alleviating a hard or oppressive bargain" (Accurate Copy Serv. of Am., Inc. v Fisk Bldg. Assoc. L.L.C., 72 AD3d 456, 457 [1st Dept 2010] [internal quotation marks omitted]).
A tenant has the sole and exclusive right to undisturbed possession of the demised premises during the term of a lease (see Camatron Sewing Mach. v F.M. Ring Assoc., 179 AD2d 165 [1st Dept 1992]). The converse must hold true also — that the tenant has no control over the landlord's retained, undemised premises. This would be subject, of course, to any cause of action which the tenant might possess against the landlord for the latter's actions affecting the tenant's utilization of the demised premises (cf. Incredible Christmas Store-N.Y. v RCPI Trust, 307 AD2d 816 [1st Dept 2003]).
The demised premises comprise only the ground floor, the backyard, and the existing three-compartment sink in the basement (see Lease § 1.14). The Court observed a clear path from the landing point at the bottom of the stairs leading from the ground floor to the basement straight to the three-compartment sink. There was nothing blocking Plaintiff's access to the three-compartment sink. Hence, there was no property of Defendant's which requires removal in an injunction. The amassed belongings and paraphernalia stored elsewhere in the basement are situated on portions of the basement not demised in the lease. Defendant maintains the right to keep it there, albeit as unsightly as Plaintiff claims it is. While Plaintiff is concerned that the Department of Health might issue a violation this is speculative. Plaintiff has not shown a likelihood of success on the merits of its claim, especially through clear and convincing evidence, that the stored items will result in a violation. If and when such a violation is issued and the parties are unable to resolve the matter, Plaintiff retains its right to pursue remedies available to it.
Although Defendant kept some property on the ground floor and backyard portions of the demised premises past the deadline date in the Lease, none is there now. An injunction ordering removal would be academic. Any issue as to a rent abatement for damages resulting from retention of property beyond the said deadline is relevant to a final determination of the merits of the action; it would be inappropriate to order a rent abatement as part of a preliminary injunction (see Masjid Usman, Inc. v Beech 140, LLC, 68 AD3d 942 [2d Dept 2009] [purpose of preliminary injunction is not to determine ultimate rights of parties]). Plaintiff has not shown [*8]that ordering a rent abatement is necessary to avoid irreparable injury. The lease provided for a rent abatement period during which Plaintiff would have complete possession of the demised premises to build out. If this was breached — that it was not afforded a rent-free period to build out — then Plaintiff can seek its remedy in the litigation.
A landlord is entitled to enforce the signs provisions of a lease (see BKNY1, Inc. v 132 Capulet Holdings, LLC, 216 AD3d 900 [2d Dept 2023]). The signs provision of the lease between the parties provides: "No Sign shall be exhibited, installed, inscribed, painted or affixed, without the prior consent of Landlord, on any part of the outside of the Building or on the windows or doors of the Premises" (Lease § 3.7). The Court notes that unlike the provision in § 5.1, which discusses fixtures, changes, improvements, alternations, and additions, where there is a clause that the "Landlord's consent shall not be unreasonably withheld," the signs provision does not include an "unreasonable consent" provision. Therefore, Defendant retains unfettered control over the placement of signage. It matters not that this is a harsh provision (see Accurate Copy Serv. of Am., Inc. v Fisk Bldg. Assoc. L.L.C., 72 AD3d at 457), since the lease was entered into by two sophisticated businesses [FN4]
(see 159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 356) — albeit Plaintiff was not represented by an attorney — and the provision is clear and unambiguous (see MHR Capital Partners LP v Presstek, Inc., 12 NY3d at 645). It is not the responsibility of the Court to rewrite the lease to insert an "unreasonable consent" provision (see 45-02 Food Corp. v 45-02 43rd Realty LLC, 37 AD3d at 525). Plaintiff failed to establish by clear and convincing evidence that it would prevail over the signage issue.
The extension of piping on the ground floor was not an issue raised in the motion papers — not even in the reply affirmation. Defendant did not know about it until the Friday before the on-site view. Therefore, it is not a proper subject matter for this motion, where the papers were filed in October. Even so, there has been no showing by clear and convincing evidence that Plaintiff would sustain irreparable injury absent the grant of the injunction concerning the piping. Moreover, § 5.1 of the lease would cover the request to extend the piping, and it is provided that the landlord's consent is necessary, which consent shall not be unreasonably withheld. Since Plaintiff has not shown that Defendant has unreasonably withheld consent to extending the piping there has not been a showing a likelihood of success on any claim regarding the piping. Speculation on how Defendant is going to respond to requests for modification of the ground floor premises does not warrant a preliminary injunction.
Based on the foregoing and taking into account the strict provisions of the instant landlord-oriented lease, the Court concludes that Defendant has not interfered with Plaintiff's buildout of the leased premises such that a preliminary injunction is called for.
Turning again to the issue of a rent abatement — Plaintiff claiming that she was improperly precluded from building out during the rent abatement period at the beginning of the lease — to the extent that there are issues beyond the items left behind on the ground floor and the backyard, these would be matters subject to the ultimate outcome of the litigation. A preliminary injunction is not a shortcut to their determination (see Masjid Usman, Inc. v Beech 140, LLC, 68 AD3d 942).
Laying aside the above-discussed issues which remained for adjudication at the close of the on-site view, it is apparent that the success of Plaintiff's coffee shop venture at the location it [*9]has rented is dependent upon maintaining an amicable relationship with the landlord. A lease was entered into. Its provisions regarding consent are binding. Defendant's concerns which morphed into distrust are not totally without reason in light of the unilateral removal of the neon Bok Choy sign and the arch in the back bar.[FN5]
Unilaterally performing modifications without the consent of Defendant will impair the goal of setting up an inviting, ambient coffee purveying establishment, and engender friction between two businesses occupying the same building. While one's favored coffee is up to taste of the customer (see People v Enders, 38 Misc 2d 746, 748 [Crim Ct, NY City 1963]), surveys show that sweetness prevails.

Conclusion
"Because the plaintiff failed to show a clear right to relief, the Supreme Court [denies] that branch of the plaintiff's motion which was for a preliminary injunction" (Corporate Coffee Sys., LLC v R.U.G. Consulting, LLC, 235 AD3d 829, 830 [2d Dept 2025]). Plaintiff has not proved by clear and convincing evidence (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the grant of the injunction, and (3) a balance of the equities in the plaintiff's favor (see CPLR 6301; Keneally, Lynch & Bak, LLP v Salvi, 190 AD3d at 963 [2021]).
That branch of the motion which sought a temporary restraining order is now academic inasmuch as the order to show cause granted it.
Accordingly, it is hereby ORDERED that the within motion is DENIED and the temporary restrained order is dissolved.

Footnotes

Footnote 1:She was one a few people who had formed the LLC and apparently was the one responsible for the coffee particulars, as opposed to the financial matters.

Footnote 2:Wen-Jay Ying, who apparently was the principal of Defendant, had operated a healthy-food business called Local Roots from the subject building. Prior to signing a lease with Plaintiff for the ground level space, Ms. Ying had operated her own coffee café there. While the coffee café was shuttered, she still wanted to use the basement for Local Roots, which was why in the basement she demised to Plaintiff only the three-compartment sink. The Court is unaware whether Ms. Ying is the only member of the defendant LLC.

Footnote 3:Besides the food-related business run from the basement, Ms. Ying had operated a café on the ground floor.

Footnote 4:Plaintiff owned another coffee shop in Red Hook.

Footnote 5:Plaintiff's unilateral modifications detract from a balance of the equities being in its favor.